Filed 1/12/16  P. v. Mendes CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>JOSE ROGER MENDES,<br><br>    Defendant and Appellant. | F067895<br><br>(Fresno Super. Ct. No. F11906451)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant/defendant Jose Roger Mendes was convicted of robbery and attempted robbery, with seven prior strike convictions and serious felony enhancements.  He was

sentenced to the third strike term of 50 years to life plus 10 years for the prior serious felony enhancements.

On appeal, defendant argues the court improperly denied his motion to dismiss the prior strike convictions, it did not understand the scope of its sentencing discretion, and one of the five-year prior serious felony enhancements must be stricken.

We will strike one prior serious felony enhancement and otherwise affirm.

## FACTS

### Robbery at Pic-N-Go Store (Count II)

On November 6, 2011, Yadwinder Singh (Singh) was the cashier at the Pic-N-Go gas station and convenience store, located at Maple and Tulare Streets in Fresno. Just before 11:00 a.m., defendant entered the store, selected a few items, and approached the counter.

Singh scanned the items and told defendant the total amount. Defendant pulled an apparent handgun[1] from his front waistband, held it in front of him, and told Singh, " 'Just give me the money, whatever you have.' "

Singh testified he became nervous and frightened that defendant was going to shoot him. Singh opened the cash register, removed the cash tray, and placed it on the counter. Appellant pulled out only the bills, took about $200 to $300, and left the store.

The store's video surveillance system filmed defendant performing the robbery. It also showed defendant running out of the store, going around the corner, and getting into a gray or pewter-colored GMC-type SUV. He was wearing blue coveralls and large-frame glasses.

### Attempted Robbery (Count I)

On November 7, 2011, Hasham Sultan (Sultan) was the cashier at Fig Tree Liquor Store on Bullard and West in Fresno. Around 10:30 p.m., Sultan stepped outside the

---

[1] Defendant was arrested the next day and found in possession of a nonlethal pellet gun, which looked very similar to a semiautomatic handgun.

2.

front door and smoked a cigarette. Rojilio Romero, Jr. (Romero), a uniformed security guard for a nearby shopping center, was inside the store and getting a fountain drink.[2]

Defendant appeared from around the corner of the building. He walked up to Sultan, who was still standing outside the front door. Sultan thought he was a customer and greeted him. Defendant was wearing a beanie on his head and pulled down a ski mask to cover his face. Defendant lifted his shirt and Sultan saw an apparent gun tucked inside his front waistband.

Defendant reached for the gun and told Sultan, " 'Give me all the money.' " Sultan saw the gun's handle and he was "pretty scared." Sultan threw down his cigarette, raised his hands, and ran into the store. Defendant followed him.

Sultan went behind the counter and opened the cash register. He placed the cash tray on the counter, and defendant started to take cash from it.

Romero, who was still in the store, saw defendant and Sultan walk to the counter. He heard defendant tell Sultan, " 'Move. Move. Let's go. Hurry up.' " Romero testified defendant was holding a firearm, but he saw an orange tip on the barrel. Romero knew the orange tip signified that it a soft air gun rather than a lethal weapon.

Romero walked behind defendant, surprised him, and placed him in a chokehold. Romero pulled his pocket knife and held the blade at defendant's neck. Romero said, " 'This is real, not that,' " and told defendant to drop his gun. Defendant tried to break away from Romero and a struggle ensued. Defendant hit Romero's forehead with the butt of his gun but Romero held onto him.

Sultan called 911, and then tried to help Romero. Defendant kept fighting Romero and said, " 'I won't do it again,' " but he continued to resist and his mask came off. Romero and defendant fell backwards to the floor. Romero and Sultan pinned defendant

---

[2] Romero testified at defendant's preliminary hearing and was subject to cross-examination by defense counsel. Romero died before defendant's trial. The court granted the prosecution's motion to read Romero's preliminary hearing to the jury, pursuant to the former testimony exception to the hearsay rule.

3.

on the floor until the police arrived. Romero suffered abrasions on his right hand and forehead from the struggle.

Defendant was arrested at the scene. He had used a plastic pellet gun with an orange tip on the muzzle. It looked like a real semiautomatic firearm but, as Romero correctly surmised, the orange tip signified that it was a nonlethal weapon.

Defendant's vehicle was a tan Chevrolet Suburban SUV, and it was parked in the driveway behind the liquor store. The police found a pair of blue coveralls and large-frame glasses inside the SUV, which were similar to those worn by the robber at the Pic-N-Go store.

**Defendant's Postarrest Statement**

After defendant was arrested, he was taken to the police department, advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and agreed to answer questions. Defendant was crying for part of the interview. He said he had been struggling for six months because he got divorced. His wife starting using methamphetamine, but he stayed "straight." He had been working in maintenance at Target for three weeks, but he stopped working five days earlier when he went on a "binge." He did not have any money or gas, he asked family and friends for help, they pushed him way, and no one helped. Defendant said he "started selling coke" because he needed money, and "then I got hooked on it." Defendant said he was taking sleeping pills to rest his mind because he was bipolar, and he was also injecting cocaine.

Defendant said he "just happened to be driving by" Fig Tree Liquor Store and needed money for gasoline. He was high on cocaine. He went in and "decided to get me 20 dollars" and "the guy starts emptying out the register, I didn't want all the money, I just wanted 20 dollars for gas. I would have brought it back, gave it to the guy…."

Defendant said he told the clerk to "give me 20 dollars," but he did not know why the clerk pulled out the register. The clerk started "pulling out money like and then the security guard grabbed me and put a knife to my throat." Defendant admitted the clerk

4.

probably gave him the money because he displayed the gun.  Defendant said it was a "toy gun" that had been laying around in his house and car for a long time.  Defendant knew he did "a bad thing" but claimed he was desperate.

Defendant was shown photographs of the robbery suspect at the Pic-N-Go store.  Defendant admitted that he was the person who robbed the store, he used the same gun, and he was driving the same vehicle.  Defendant said he was strung out at the time, he did not remember what led up to the robbery, and he did not remember what happened to the money that he took.  Defendant thought he "[b]lew it on gas and coke," and he only had 50 cents when he was arrested.

Singh, the clerk at Pic-N-Go, subsequently reviewed a photographic lineup with defendant's photograph.  He pointed to another subject's picture and said he was only 50 percent sure that person was the robber.  Singh never pointed to defendant's picture.  Singh also looked at the blue coveralls found in defendant's vehicle, and said he was sure the robber wore them.  Singh was shown a photograph of the pellet gun seized from defendant, and said it was the same size and color as the robber's gun.

## PROCEDURAL HISTORY

### First Competency Examination

On November 9, 2011, a criminal complaint was filed which charged defendant with attempted robbery (Pen. Code, §§ 664/211)[3] with one prior strike conviction.

On January 26, 2012, based on defense counsel's representations, the court declared a doubt as to defendant's competency, suspended proceedings pursuant to section 1368, and appointed Dr. Robert Taylor to examine defendant.

Dr. Taylor reported that defendant claimed to be disoriented, confused, and suffering hallucinations and delusions.  After examining defendant, however, Dr. Taylor concluded he was malingering.  Defendant did not suffer from any organic brain

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

disorders, and his "presentation of cognitive and psychotic impairment is an attempt to exaggerate or feign dysfunction in order to avoid criminal responsibility. Numerous inconsistencies in his presentation were indicative of an individual malingering. Psychological testing revealed that he reported rare combinations of symptoms and unusual hallucinations that are not typically endorsed by genuine psychiatric patients." Dr. Taylor concluded defendant was competent to stand trial.

On April 19, 2012, the court found defendant was competent and reinstated criminal proceedings.

**Preliminary Hearing and Charges**

On August 17, 2012, defendant was held to answer after the preliminary hearing.

On November 29, 2012, a first amended consolidated information was filed which charged defendant with count I, attempted second degree robbery of Sultan; and count II, second degree robbery of Singh (§ 211). It was further alleged he had seven prior serious felony conviction enhancements (§ 667, subd. (a)); and seven prior strike convictions (§ 667, subds. (b)-(i)).

**Second Competency Examination**

On December 5, 2012, the court again declared a doubt as to defendant's competency based on defense counsel's representations, suspended proceedings pursuant to section 1368, and appointed Dr. Harold Seymour to evaluate defendant.

Dr. Seymour reported defendant was competent. Dr. Seymour reported defendant had attempted suicide in jail, that he was under the care of the jail's psychiatric services, and that defendant said he was very depressed. Dr. Seymour believed defendant suffered from major depression and mild dementia from failing to treat his diabetic condition. However, defendant was taking medication, cooperating with psychiatric treatment, and his mental state was improving.

On January 9, 2013, the court reviewed the expert's report, found was defendant competent, and reinstated proceedings.

**Verdict and Sentence**

On June 5, 2013, defendant's jury trial began.

On June 11, 2013, defendant was convicted as charged of robbery and attempted robbery, and he admitted the prior conviction allegations.

On July 19, 2013, the court denied defendant's request to dismiss any of the prior strike convictions. The court sentenced defendant to an aggregate term of 50 years to life plus 10 years for the prior serious felony enhancements.

## DISCUSSION

### I.     Denial of Request to Dismiss Prior Strike Convictions

Defendant contends the court abused its discretion and failed to apply the appropriate legal standard when it denied his request to dismiss six of his seven prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

We will review the background and find the court did not abuse its discretion.

*A.  Defendant's prior convictions*

According to the probation report, defendant was convicted in 1987 for felony possession of a controlled substance and misdemeanor petty theft; he was placed on probation. In 1988, he was convicted of felony grand theft property and placed on probation. In August 1993, he was convicted of misdemeanor petty theft and giving false information and received local time. In October 1993, he was convicted of the misdemeanor offenses of using a controlled substance, trespass, and attempted second degree burglary, and placed on probation.

The amended information alleged defendant had seven prior strike convictions, based on his convictions on June 13, 1994, in Santa Clara Superior Court case No. 172287, for six counts of first degree residential burglary (§§ 459, 460, subd. (a)), and one count of attempted first degree burglary (§§ 664/459/460, subd. (a)). The record

7.

implies he pleaded guilty to these charges. He was sentenced to eight years six months (104 months) in prison.

The only evidence about the prior strike convictions is in the probation report, which states: "From July 26, 1993, to September 6, 1993, the defendant broke into, or attempted to break into, seven different residences while the victims were away. While in the homes, he removed numerous items of value. At one house, he made a sandwich, ate an ice cream bar, drank a beer and used the toilet."

In January 1999, defendant was paroled; he was discharged from parole in February 2000. He had not committed any additional offenses until he was arrested for the robberies in this case.

In the probation report, defendant said after he was released from prison in 1999, he obtained his Class A driver's license and earned a certificate as a hazardous business plan specialist. Shortly before the robberies, he had been employed at Target, but he "disappeared" from that job about three or four weeks before he committed the current offenses.

Defendant said he was "messed" up after his divorce. He started using drugs and cocaine again a few days before the robberies, and he wanted to kill himself. Defendant admitted he used a plastic gun during the robberies, but he never pointed it at anyone. However, he would have pointed it at the police officers " 'so they would kill me. I think I wanted them to kill me.' " Defendant said he committed the robberies for "gas and cocaine." Defendant said he cut his wrists while in jail.

The probation report found aggravating factors that the crime was carried out with planning, sophistication, or professionalism; defendant engaged in violent conduct which indicated a serious danger to society; his prior convictions were numerous and of increasing seriousness; and he had served a prior prison term. There were no mitigating factors.

*B. Defendant's request to dismiss the prior strikes*

Defendant admitted all seven prior conviction allegations. He filed a request for the court to dismiss six of the seven prior strike convictions pursuant to *Romero* and impose a determinate second strike term instead of an indeterminate third strike term. Defendant's motion asserted that after he was paroled in 1999, he did not commit any offenses, he stayed employed, and he did not use drugs. Defendant's motion stated he had turned his life around and had been a productive citizen after prison, but "he had some type of break down and lapse of judgment" and started using drugs again, which resulted in the current convictions.

Defendant's *Romero* request was supported by several letters from family and friends who affirmed his good character, declared the robberies were likely the result of mental and emotional problems, and stated their continuing support for him.

The People filed opposition and argued defendant's criminal record began when he was 21 years old. He previously served a lengthy prison term as a result of his seven prior strikes, continued "to bring violence into this community," and had initiated the violence during the two current offenses. Defendant's prior convictions were older but very serious. He continued to commit violent offenses, and his current convictions arose from two separate incidents and victims.

*C. Sentencing Hearing*

On July 19, 2013, the court held the sentencing hearing. Defense counsel acknowledged the seriousness and number of defendant's prior strike convictions, but urged the court to consider the age of the convictions, and that defendant had not committed any offenses for 20 years until the current case. Defense counsel realized defendant would receive a significant sentence, but asked the court to impose a second strike determinate term.

The prosecutor acknowledged the prior strike convictions were old, but there were seven prior offenses and defendant had progressed to committing violent offenses in this

9.

case. Defendant's excuses about why he committed the robberies were refuted by the trial evidence. Defendant did "everything he could to complete" the second robbery, and he was only stopped by a bystander. There was evidence of planning and sophistication based on where he parked his car and his use of a mask during the second robbery. These facts were inconsistent with defendant's claim that he did not know what he was doing. The prosecutor pointed to the numerous supportive letters submitted on defendant's behalf, and argued that they refuted defendant's claim that no one would help him.

Defendant addressed the court:

"Your Honor, all my previous charges were very old charges. I'm not proud of what I did. I'm guilty of what I did. I don't know what reason caused me to make all this because I did have family out there. I did have everything that I needed. I didn't have to steal the material stuff. I didn't need nothing. But for what reason, I don't know why. I did it and I just did it…. I'm ashamed of it and I wish I could apologize to all the victims. I apologize to you for bringing this back. I don't think I deserve a life sentence.

"My six counts of burglaries they were tract homes. *They weren't even with people dwelling in it*.[4] I made a mistake when I was young. I tried to correct it but, unfortunately, for stuff that happened during my life from that time from that point caused me to be here, and … I apologize." (Italics added.)

### D. The Court's Ruling

The court denied defendant's request to dismiss the prior strikes under *Romero*. The court stated that it had listened to the trial evidence and reviewed the probation report and the sentencing motions. It noted that defendant had given numerous inconsistent statements about the robberies, particularly his claim to the arresting officers that he just asked the clerk at the second store for gas money, and he did not know why the clerk gave him money from the cash register. "It didn't apparently make sense to the

---

[4] The probation report refutes defendant's claim that the burglaries were committed at tract homes where people were not "dwelling." Defendant was convicted of first degree residential burglaries, he committed the offenses at "seven different residences while the victims were away," and he "removed numerous items of value."

10.

jurors because they didn't buy it, particularly in light of the fact that just the day prior during the successful robbery [defendant] had made off with approximately $200."

> "When considering whether to strike the serious felony prior the Court must look at the spirit of the Three Strikes Law and determine whether the person before the Court falls outside of that spirit in whole or in part. The Three Strikes Law was enacted because the People of California were tired of people who had a criminal history, a significant history from committing new offenses in spite of that criminal history. It is clear that [defendant] does not fall outside the spirit of the Three Strikes Law. In fact, even the recent amendments of the Three Strikes Law [defendant] falls squarely within its parameters in that his prior history includes a number of strikes or serious or violent felonies and the instances here are serious or violent felonies.

> "Accordingly, the Court will deny the invitation to strike the serious felony priors in this case. [Defendant] does not qualify in this court's mind for that type of leniency in light of the very clear statement of the People of California as to what is the appropriate sentencing for someone similarly situated to [defendant]."

The court noted that in one of letters submitted in defendant's support, the writer stated that justice would not be served by punishing defendant " 'for his mental and emotional issues.' "

> "This court is unaware of any mental issues. There is a very brief discussion in the probation report about the defendant being depressed and taking allegedly some medication for that, but that is the extent of the Court's knowledge.[5] More importantly, the Court in considering emotional issues, *the Court believes that the defendant is quite manipulative as to his emotions as was displayed in the statement, the recorded statement again, that he gave to law enforcement and when he seemed, at least in this court's view, to become emotional and almost cry on cue*.[6]

---

[5] According to the probation report, defendant said he had suffered several small strokes because of diabetes. He was in a serious car accident in 1994, and he subsequently suffered from depression. Defendant said was taking medication in jail for his physical and mental health issues.

[6] As explained above, the court suspended criminal proceedings shortly after defendant was arrested because of doubts about his competency, defendant claimed to be suffering from various psychiatric problems, but the competency expert found he was malingering and trying to avoid criminal responsibility.

11.

"One of [defendant's] cousins asked that the court not discard people. This court does not discard anyone. This court sentences defendants according to their conduct, their history and the law." (Italics added.)

The court sentenced defendant to the third strike term of 25 years to life for count II (robbery) plus five years for a prior serious felony enhancement, and a consecutive term of 25 years to life for count I (attempted robbery) plus five years for the prior serious felony enhancement, for an aggregate term of 50 years to life plus 10 years.

"The Court is imposing the terms consecutively because they were clearly two separate events, two separate victims, and two separate times."

The court advised defendant that he "did not give your attorney really anything to work within this case, sir. That is very unfortunate."

*E. Section 1385*

Section 1385 grants discretion to the trial court to dismiss a prior strike conviction in furtherance of justice. (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529–530.) In deciding whether to dismiss a prior strike conviction, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies…." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or

12.

where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce [] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary...." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

*F. Analysis*

Defendant argues that while a third strike term was "technically authorized" in this case, the court abused its discretion when it declined to dismiss his prior strike convictions because it failed to follow the factors set forth in *People v. Williams*, *supra*, 19 Cal.4th 148. Defendant asserts he was outside the spirit of the Three Strikes law because his prior convictions arose from a single case in 1994, it involved a single period of aberrant behavior for which he received a prison term, he did not commit any violent acts during the prior strike convictions, and he did not commit any additional offenses after he was discharged on parole until the two current crimes.

Defendant's arguments are meritless. The record reflects the court considered the trial evidence, the probation report, and the parties' pleadings and arguments when it

13.

denied his request to dismiss the prior strike convictions.  The court acknowledged defendant's record but found his prior and current convictions placed him within the spirit of the Three Strikes law.  The court was particularly concerned that his current offenses for robbery and attempted robbery were also serious or violent felonies, and cited the trial evidence which undermined his postarrest claim that he just asked the clerk for gas money and did not intend to commit a robbery.[7]

Defendant relies on *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), and argues the court was required to stay six of the seven prior strike convictions because they were "prosecuted together" and arose from a single prior case.  *Vargas* is inapposite to the facts of this case.  The defendant in Vargas had two prior strike convictions for robbery and carjacking, which "were based on *the same act* of taking the victim's car by force[.]" (*Id.* at pp. 640, 645, italics added.)  *Vargas* held that "two prior convictions arising out of *a single act* against a single victim" cannot constitute two separate strikes, and the sentencing court should have dismissed one of the strikes.  (*Id.* at p. 637, italics added.) *Vargas* explained that treating such a defendant as a third strike offender "was inconsistent with the intent underlying both the legislative and initiative versions of the Three Strikes law.  [Citation.]"  (*Id.* at p. 645.)  The defendant's prior strikes "were not only tried in the same proceeding and committed during the same course of criminal conduct, *they were based on the same act, committed at the same time, against the same victim*…."  (*Id.* at p. 638, italics added.)  In reaching this conclusion, *Vargas* explained it was addressing "multiple criminal *convictions* stemming from the commission of a single act[]" and not "multiple criminal *acts*" committed in a single course of conduct.  (*Id.* at p. 648, italics in original.)

---

[7] Robbery is both a serious (§ 1192.7, subd. (c)(19) and violent felony (§ 667.5, subd. (c)(9), and attempted robbery is a serious felony (§ 1192.7, subds. (c)(19) & (c)(39).

14.

*Vargas* does not apply to defendant's seven prior strike convictions for burglary and attempted burglary, committed "[f]rom July 26, 1993, to September 6, 1993, [when] the defendant broke into, or attempted to break into, *seven different residences* while the victims were away." (Italics added.) Based on the record before this court, defendant's prior convictions were based on different acts committed on different dates against different victims, rather than the same act committed at the same time against the same victim.

Defendant concedes that, in contrast to *Vargas*, his prior burglary convictions "encompassed more than one act (seven different residences evidently on different days)." Nevertheless, defendant argues that *Vargas's* analysis of premise of the Three Strikes law should "transfer" to his case because he "only had one opportunity to reform after his first qualifying felony burglary conviction[s]," all of the convictions were suffered on the same date, and they resulted in a single prison term.

Defendant's argument is based on the following discussion in *Vargas*: "The typical third strike situation ... involves a criminal offender who commits a qualifying felony after having been afforded *two previous chances to reform* his or her antisocial behavior, hence the law's descriptive baseball-related phrase, ' "Three Strikes and You're Out." ' [Citation.]" (*Vargas*, *supra*, 59 Cal.4th at p. 638, italics added.) *Vargas* held that when two separate convictions are based on a single act against a single victim on a single occasion, the offender has not been afforded two opportunities for reform, but only one. Accordingly, a trial court abuses its discretion in failing to dismiss one of the strikes; the court should have sentenced the offender as a second striker, rather than as a third striker. (*Id.* at pp. 647–649.)

In general, "a prior qualifying conviction need not have been brought and tried separately from another qualifying conviction in order to be counted as a separate strike…." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 932.) *Vargas* carved an exception under a particular set of circumstances and held two prior convictions cannot constitute

separate strikes when they arise "out of a single act against a single victim." (*Vargas*, *supra*, 59 Cal.4th at p. 637.) As we have already explained, the record before this court shows that defendant's prior strikes were not based on a single act committed against a single victim, and *Vargas's* sentencing rule does not apply.

As a separate matter, defendant asserts the reasoning in *Vargas* also applies to the third strike sentences imposed for his current convictions in count I, attempted robbery, and count II, robbery. Defendant argues that instead of imposing two consecutive third strike terms for his convictions, the court should only have imposed a single term under *Vargas* because the robbery and attempted robbery "took place on the same date" and he did not receive "two chances to reform."

Defendant's argument again fails. *Vargas* only addresses whether the court should dismiss one or more prior strike convictions. It does not apply to the court's determination whether to impose consecutive indeterminate terms for *current* third strike convictions. (*In re Alejandro B*. (2015) 236 Cal.App.4th 705, 711.) Moreover, even if *Vargas* applied to the imposition of sentences for the current convictions, defendant still would not have qualified for leniency because he committed the robbery and attempted robbery on consecutive days against different victims and in different places.

Finally, defendant asserts the court relied on facts outside the record when it stated that defendant seemed "to cry on cue" during his postarrest videotaped interview. Defendant argues there was no evidence for the court to infer that his tears were "feigned," and the court's reliance on this factor to deny his *Romero* request was nothing more than speculation.

Defendant's "speculation" argument is based on *People v. Cluff* (2001) 87 Cal.App.4th 991 (*Cluff*), where the defendant was sentenced to a third strike term after he was convicted of failing to comply with the sex offender registration requirements. *Cluff* held the trial court abused its discretion when it denied the defendant's motion to dismiss the prior strike convictions. *Cluff* concluded substantial evidence did not support the

16.

"critical inference" upon which the trial court relied in denying the defendant's motion to dismiss—that the defendant failed to annually update his registration with the intent to " 'obfuscate' his true residence." (*Id.* at pp. 997, 1002–1003.) "[T]he trial court's analysis became disconnected from the evidence and entered the realm of imagination, speculation, supposition, and guesswork…." (*Id.* at p. 1002.)

In contrast to *Cluff*, the court in this case did not rely on speculation, supposition, or evidence outside the record when it denied defendant's request to dismiss the prior strike convictions. The court's comment that defendant appeared manipulative during the post-arrest interview is supported by the conflicts between defendant's postarrest statement, the videotape of the interview, the videotapes of the two crimes, the trial evidence, and the procedural history of this case. Defendant's tearful statements to the arresting officers were refuted by the trial evidence. Defendant claimed he did not know what he was doing when he committed the first robbery and insisted he only asked the Fig Tree clerk for gas money and did not know why the clerk opened the cash register. The evidence about the Pic-N-Go robbery showed that defendant parked his SUV around the block from the store and demanded cash at gunpoint. The following day, defendant was a bit more sophisticated. He again parked his car behind the liquor store, but this time he pulled a ski mask over his face. He displayed what appeared to be a semiautomatic handgun, demanded the clerk hurry and open the register, violently resisted Romero's order to drop the gun, and attacked Romero during the struggle. He was only thwarted from completing the robbery because Romero and Sultan managed to tackle him to the floor.

The court's observations are also supported by defendant's conduct a few weeks after he was arrested. Shortly after the criminal complaint was filed, the court suspended criminal proceedings and ordered a competency evaluation pursuant to section 1368. Defendant claimed to be disoriented, confused, and suffering hallucinations and delusions. However, the examining expert concluded defendant was competent and

17.

malingering. Defendant's "presentation of cognitive and psychotic impairment is an attempt to exaggerate or feign dysfunction in order to avoid criminal responsibility. Numerous inconsistencies in his presentation were indicative of an individual malingering."

The court did not abuse its discretion when it denied defendant's request to dismiss his prior strike convictions.

## II.  **Imposition of Third Strike Terms**

Defendant raises a separate argument in support of his claim that the matter must be remanded for a new *Romero* hearing as to whether the court should dismiss six of his seven prior strike convictions. The premise for this argument is the well-recognized principle that "an erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion. [Citation.]" (*People v. Marquez* (1983) 143 Cal.App.3d 797, 803; *People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.)

Defendant posits that when the court denied his *Romero* request and imposed consecutive third strike terms, the court "applied the wrong Three Strikes Law – the court applied the former law even though the New Three Strikes Law is applicable to defendant's case." Before we address defendant's assignment of error, his statement about the "old" and "new" versions of the Three Strikes law are based on Proposition 36, the Three Strikes Reform Act (the Act), which was enacted by California voters on November 6, 2012. (*People v. Johnson* (2015) 61 Cal.4th 674, 680–681.) "Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of *any new felony* is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases *where the current crime is a serious or violent felony* or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. [Citations.] The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three

18.

strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168; *People v. Johnson*, *supra*, 61 Cal.4th at pp. 680–681.)

Defendant notes he committed the current robbery offenses in 2011, but he was convicted and sentenced in 2013 and thus subject to the sentencing provisions of Proposition 36. He concedes he was still subject to receive third strike terms under the Act because his current offenses were for the serious or violent felonies of robbery and attempted robbery.

Defendant asserts, however, that the court made statements at the sentencing hearing which indicated that it erroneously believed he was subject to the "old" Three Strikes law, and that mistaken belief showed the court applied the wrong law and did not understand the scope of its discretion when it denied his *Romero* request. Defendant cites the court's comment that defendant still fell within the parameters of the Three Strikes law even with "the recent amendments," and that it imposed consecutive sentences under the "old" standard because the current offenses involved separate times, victims, and events. Defendant asserts the court's statements "reveal" that it "applied the former Three Strikes Law rather than the current law," it did not understand the scope of its discretion when it denied his *Romero* request, and remand is necessary for the court to correctly exercise its discretion.

Defendant's arguments are meritless. As we have explained in issue I, *ante*, the court properly evaluated the entirety of the record and did not abuse its discretion when it denied defendant's request to dismiss the prior strike convictions. The court was well aware of the amendments to the Three Strikes law, it found defendant was not subject to a more lenient term under Proposition 36 since his third strikes were for serious or violent felonies, and it concluded consecutive sentences were appropriate given the nature and

19.

circumstances of the current offenses. The court may have made findings under both the former and amended laws to reinforce its determination that third strike terms were appropriate under both versions regardless of whether the amendments were retroactive or prospective. In any event, the court's comments did not demonstrate that it applied the wrong law or misunderstood the scope of its discretion when it denied defendant's motion to dismiss the prior strike convictions.

### III.   Imposition of Two Prior Serious Felony Enhancements

Defendant contends the court erroneously imposed two separate five-year terms for his prior serious felony enhancements, and that one term must be stricken, because section 667, subdivision (a)(1) prohibits multiple enhancements unless the prior convictions were "brought and tried separately." The People assert that two five-year enhancements were appropriate because defendant was sentenced to multiple indeterminate terms. We agree with defendant and will strike one five-year term.

*A.   Background*

Defendant was convicted of count I, attempted robbery; and count II, robbery, and he admitted seven prior serious felony enhancements (§ 667, subd. (a)(1)) and seven prior strike convictions.

As explained in issue I, *ante*, the prior conviction allegations were based on his six convictions for first degree burglary, and one conviction for attempted first degree burglary, all arising from Santa Clara Superior Court case No. 172287, on June 13, 1994. Since defendant admitted the seven prior conviction allegations, the prosecution did not introduce any evidence about the nature or circumstances of the charges or convictions. The only evidence about these prior offenses is in the probation report, which states that "[f]rom July 26, 1993, to September 6, 1993, the defendant broke into, or attempted to break into, seven different residences while the victims were away."

In one section of the probation report, it recommends imposition of two consecutive terms of 25 years to life for counts I and II, plus a single five-year term for

one prior serious felony enhancement which was "brought and tried separately."  In another section, it recommends imposition of two consecutive five-year terms for two prior serious felony enhancements.

At the sentencing hearing, the court imposed the same term for both counts:  the third strike term of 25 years to life, plus five years for the prior serious felony enhancement (§ 667, subd. (a)(1)), with the terms to run consecutively, for an aggregate term of 50 years to life plus 10 years.  Defendant did not object to the imposition of two prior serious felony enhancements.

### B.  Enhancements Applied to Determinate and Indeterminate Terms

We begin with the provisions of section 667, subdivision (a)(1), which states:

> "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately.  The terms of the present offense and each enhancement shall run consecutively."

"In *People v. Tassell* (1984) 36 Cal.3d 77 … (*Tassell*), this court held that when imposing a *determinate* sentence on a recidivist offender convicted of multiple offenses, a trial court is to impose an enhancement for a prior conviction only once to increase the aggregate term, and not separately to increase the principal or subordinate term imposed for each new offense.  [Citation.]" (*People v. Williams* (2004) 34 Cal.4th 397, 400, fn. omitted.)  "Although *Tassell* did not involve prior serious felony enhancements imposed under section 667(a)(1), we have subsequently confirmed that *Tassell's* rule applies to such enhancements.  [Citation.]" (*People v. Sasser* (2015) 61 Cal.4th 1, 10–11.)

If the defendant is sentenced to an indeterminate third strike term, and a prior serious felony enhancement has been found true, the court must impose a five-year term for that enhancement consecutive to the indeterminate term.  (*People v. Williams*, *supra*, 34 Cal.4th at p. 404.)  If the defendant has been sentenced to multiple indeterminate third

21.

strike terms, a five-year enhancement must be applied individually to each count. (*Id*. at pp. 404–405.) "The Three Strikes law, unlike section 1170.1, does not draw any distinction between status enhancements, based on the defendant's record, and enhancements based on the circumstances of the current offenses, and the Three Strikes law generally discloses an intent to use the fact of recidivism to separately increase the sentence imposed for each new offense. Accordingly, we conclude that, under the Three Strikes law, section 667(a) enhancements are to be applied individually to each count of a third strike sentence." (*Ibid*.; *People v. Sasser*, *supra*, 61 Cal.4th at p. 12.)

The People rely on *Williams* and argue that since defendant was sentenced to two indeterminate third strike terms, the court properly imposed separate five-year enhancements to both counts I and II, and the limitations addressed in *Tassell* are not applicable.

While multiple enhancements were permissible under *Williams* and the three strikes law, there is still an important distinction contained within the language of section 667, subdivision (a)(1).

C. *"Brought and Tried Separately"*

Defendant argues that the court could only impose one five-year enhancement since all seven prior serious felony convictions originated from the same case number and were not brought and tried separately.

In contrast to the Three Strikes law, section 667, subdivision (a)(1) provides in relevant part for a five-year enhancement only "for each such prior [serious felony] conviction on charges *brought and tried separately*." (Italics added; cf. *People v. Fuhrman*, *supra*, 16 Cal.4th at pp. 932–933.)

"[I]t is an *element* of the prior serious felony enhancement that the charges be 'brought and tried separately' and where … multiple serious felonies were proven in a single prior proceeding, the People cannot prove more than one such enhancement exists." (*People v. Jones* (2015) 236 Cal.App.4th 1411, 1416 (*Jones*).)

22.

Several cases have addressed whether prior convictions were "brought and tried separately" for purposes of imposing multiple section 667, subdivision (a) enhancements. In *In re Harris* (1989) 49 Cal.3d 131 (*Harris*), the defendant had two prior robbery convictions that arose from a single complaint and a single preliminary hearing. However, two informations were filed and the defendant entered two separate guilty pleas. (*Id.* at pp. 133–134.)

*Harris* held that "the requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been *formally distinct, from filing to adjudication of guilt*. Here, as the record plainly reveals, the charges in question were not 'brought ... separately,' but were made in a single complaint." (*Harris*, *supra*, 49 Cal.3d at p. 136, italics added.) *Harris* concluded the defendant was subject to only one five-year enhancement. (*Id.* at p. 137.) *Harris* did not discuss whether the cases had been "tried" separately, although it did note: "[T]here is 'no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits.' [Citations.]" (*Id.* at p. 135.)

In *People v. Gonzales* (1990) 220 Cal.App.3d 134 (*Gonzales*), the defendant had two prior burglary convictions and was sentenced to two prior serious felony enhancements. The prior convictions were based on two separate complaints, filed a month apart under separate case numbers, and were based on separate incidents. The defendant pleaded guilty to the two prior convictions and was sentenced at the same hearing. He argued there was "a 'de facto' consolidation of the two cases," and that the court could not impose two separate section 667, subdivision (a) enhancements. (*Gonzales*, *supra*, at pp. 136–137, 139.)

*Gonzales* held multiple enhancements were appropriate because the cases were never consolidated, and they were brought and tried separately even though "the guilty pleas and the imposition of sentence were contemporaneous ...." (*Gonzales*, *supra*, 220 Cal.App.3d at p. 140.) Since the cases were never consolidated, "[t]hey remained

23.

formally distinct from their inception through sentencing." (*Id.* at p. 144.) "[A]lthough the guilty pleas and the imposition of sentence were contemporaneous, we do not believe that temporal togetherness alone is sufficient to defeat the demonstrated intention of the parties and the court. The fact that both cases were called for hearing in municipal court on the same day is not evidence of a motion or grant of consolidation. Rather, it is a product of the practical realities of an overburdened criminal court system." (*Id.* at p. 140; see also *People v. Smith* (1992) 7 Cal.App.4th 1184, 1189, 1192–1193; *People v. Wagner* (1994) 21 Cal.App.4th 729, 732–734, 737.)

In *Jones*, *supra*, 236 Cal.App.4th 1411, the defendant was subject to indeterminate third strike terms. His two prior convictions for robbery and attempted robbery had been charged together under the same case number and adjudicated in the same proceeding. At sentencing, the court imposed two five-year enhancements, but stayed the second enhancement based on the prior conviction, which had not been brought and tried separately. The People conceded the two prior convictions were not brought and tried separately, but argued the sentencing court properly stayed the second enhancement. (*Id.* at pp. 1414–1416.) *Jones* rejected this argument and held "the mere *imposition* of sentence for a prior conviction that was *not* brought and tried separately runs afoul of the statute, whether or not the sentence is executed[,]" and the second enhancement had to be stricken. (*Id.* at p. 1416, italics in original.)

*D. Analysis*

We first note that while defendant did not object to the court's imposition of two prior serious felony enhancements, he has not forfeited review of a legally unauthorized sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

Even though defendant was subject to multiple indeterminate third strike terms, the court could only impose multiple prior serious felony enhancements if they were "brought and tried separately" pursuant to the elements of section 667, subdivision (a)(1). (*Jones*, *supra*, 236 Cal.App.4th at p. 1416.) Based on the record before this court, there

24.

is insufficient evidence that defendant's seven prior serious felony convictions were brought and tried separately. While defendant committed the seven offenses over the course of several days, all seven convictions are from the same superior court case number and occurred on the same date. There is no evidence that separate complaints or informations were filed which culminated in one proceeding for conviction and sentence. It thus appears the sentencing court was limited to imposing only a single five-year term for the prior serious felony enhancement under section 667, subdivision (a). (*Jones*, *supra*, 236 Cal.App.4th at p. 1416.) One of the five-year prior serious felony enhancements must be stricken.

## DISPOSITION

The judgment is modified by striking the five-year-term imposed consecutive to count II for the section 667, subdivision (a) prior serious felony enhancement. As modified, the judgment is affirmed in all other respects. The trial court shall prepare and forward to the Department of Corrections and Rehabilitation a certified copy of an amended abstract of judgment.

_____

POOCHIGIAN, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DETJEN, J.

25.